IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PETER C. GUERRERO,              )    Civ. No. 08-00344 BMK
                                )
            Plaintiff,          )    ORDER GRANTING IN PART
                                )    AND DENYING IN PART
      vs.                       )    DEFENDANT'S MOTION FOR
                                )    SUMMARY JUDGMENT
STATE OF HAWAII,                )
DEPARTMENT OF PUBLIC            )
SAFETY,                         )
                                )
            Defendant.          )
_____ )

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

        Before the Court is Defendant State of Hawaii Department of Public

Safety's ("DPS") Motion for Summary Judgment (Doc. 105).  The Court heard this

Motion on January 6, 2011.  After careful consideration of the Motion, the

supporting and opposing memoranda, and the arguments of counsel, DPS's Motion

is GRANTED IN PART and DENIED IN PART.

FACTUAL BACKGROUND

        Guerrero is from Guam, and his race/ethnicity is Chamorro.  (DPS Ex.

A at 14.)  In January 2006, he was hired by DPS as a Deputy Sheriff Recruit.

(Guerrero Decl'n ¶ 10.)  He alleges that DPS employees treated him "differently

than the non-Guamanians" since he began working there.  (Id. ¶ 14.)  Due to his

treatment at DPS, Guerrero filed several complaints with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC"). (Id. ¶¶ 27-30.) After receiving right-to-sue letters, Guerrero filed this lawsuit on July 25, 2008.

After the filing of this lawsuit, in April 2009, PSD posted vacancies for Deputy Sheriff III positions, and applicants would be required to take a written exam and participate in an oral interview. (DPS Exs. C-D.) Guerrero applied for those positions. (Guerrero Decl'n ¶ 31.) He later learned that Lieutenant Robin Nagamine ("Lt. Nagamine") and Lieutenant Albert Cummings ("Lt. Cummings"), two individuals named in his lawsuit for discrimination and retaliation, would be conducting his interview. (Id.) Guerrero requested to have them replaced for his interview, but that request was denied. (Id.)

During the interviews, all candidates are asked the same questions, and the interviewers are not allowed to deviate from those questions or ask follow-up questions. (Kitamori Decl'n ¶¶ 7-9.) Each applicant is given a score based on whether the desired response is given. (Id. ¶ 11.) After combining applicants' written exam scores and oral interview scores, the applicants are ranked and the applicants with the highest scores are recommended for the Deputy Sheriff III positions. (Id. ¶ 17.)

On June 18, 2009, Lt. Nagamine, Lt. Cummings, and Lieutenant Patrick Lee conducted Guerrero's interview.  (Id.)  Guerrero received 33 points out of 71 possible points (46.48%) for his interview.  (Id. ¶ 18.)  On his written exam, he received 32 points out of 50 possible points (64.00%).  (Id.)  Guerrero's overal final score was 55.42%.  (Id. ¶ 19.)  Because other applicants earned higher scores than Guerrero, he was not selected to fill the Deputy Sheriff III vacancies.

On November 9, 2001, Guerrero filed complaints based on his non-selection for the Deputy Sheriff III positions with EEOC and HCRC.  (Guerrero Decl'n ¶ 32.)  After receiving right-to-sue letters, he filed his Third Amended Complaint, which added allegations regarding his non-selection.  Guerrero alleges that DPS violated Title VII's prohibition of race/national origin discrimination, as well as retaliation.

DPS now moves for summary judgment on those allegations.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving

party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also

Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir.

2000).

      In deciding a motion for summary judgment, the court's function is

not to try issues of fact, but rather, it is only to determine whether there are issues

to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from

which a reasonable inference could be drawn in favor of the non-moving party on a

material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc.

v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

## DISCUSSION

      PSD moves for summary judgment on the allegations in the Third

Amended Complaint relating to Guerrero's non-selection for the Deputy Sheriff III

positions.  The Third Amended Complaint alleges that Guerrero's non-selection

violated Title VII's prohibition of race/national original discrimination and

retaliation in the employment context.  PSD contends that Guerrero fails to meet

his burden to prove discrimination and retaliation under Title VII.

      Title VII of the Civil Rights Act of 1964 forbids employment

discrimination against any individual based on that individual's "race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff alleging

disparate treatment under Title VII must first establish a prima facie case of

discrimination by offering evidence that "give[s] rise to an inference of unlawful

discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253

(1981); see EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009). A plaintiff

may establish a prima facie case by meeting the four-part test set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A prima facie case

under McDonnell Douglas requires a plaintiff to offer proof that: (1) he belongs to

a protected class; (2) he performed his job adequately or satisfactorily; (3) he

suffered an adverse employment action; and (4) other similarly situated employees

who do not belong to the same protected class were treated differently. McDonnell

Douglas, 411 U.S. at 802; see Cornwell v. Electra Cent. Credit Union, 439 F.3d

1018, 1028 (9th Cir. 2006); Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir.

2007).

   For a retaliation claim under Title VII, the plaintiff's prima facie case

consists of establishing that: "(1) he engaged in a protected activity; (2) his

employer subjected him to an adverse employment action; and (3) a causal link

exists between the protected activity and the adverse action." Ray v. Henderson,

217 F.3d 1234, 1240 (9th Cir. 2000); Vasquez v. County of L.A., 349 F.3d 634,

646 (9th Cir. 2004); <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003).

Once a prima facie case has been made for either a discrimination or retaliation claim, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the employer does so, the plaintiff must then establish that the articulated reason is pretextual by "show[ing] <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." <u>St. Mary's Honor Cent. v. Hicks</u>, 509 U.S. 502, 515 (1993) (emphasis in original).

PSD concedes that Guerrero meets some of the factors required to prove his prima facie cases for the discrimination and retaliation claims. Assuming that Guerrero can prove his prima facie case, the burden shifts to PSD to "articulate some legitimate, nondiscriminatory reason for" Guerrero's non-selection for the Deputy Sheriff III positions. PSD has met this burden.

According to Clayton Kitamori, who is the Chief of Recruitment and Staff Technical Services Unit for PSD and oversees the selection process for the filling of employment vacancies in PSD, Guerrero "was not selected to fill those vacancies [for the Deputy Sheriff III positions] because other candidates earned

higher scores." (Kitamori Decl'n ¶ 21.) All applicants for the positions who met the minimum qualifications were scheduled for a written test and an oral interview. (Id. ¶ 6.) The written and oral questions were compiled by law enforcement experts. (Id. ¶ 7.) The questions asked during the interviews were standard for all candidates and the interviewers were not allowed to "deviate from the questions and could not ask any additional or follow-up questions." (Id. ¶¶ 7-8.) Generally, after the applicants receive scores for the written test and oral interview, they are ranked, and the applicants with the highest scores are recommended for the positions. (Id. ¶ 17.)

Each applicant for the Deputy Sheriff III positions, including Guerrero, were given a score for the written test and the oral interview. For the written exam, Guerrero scored 32 out of 50 possible points (64%); for the oral interview, he scored 33 out of 71 possible points (46.48%). (Id. ¶ 18; PSD Exs. H-J.) After combining the written and oral scores, Guerrero had an overall final score of 55.24%. (Kitamori Decl'n ¶ 19.) Because Guerrero did not score the highest out of the applicants for the Deputy Sheriff III positions, he was not selected to fill either vacancy. (Id. ¶ 21.) Based on his scores, DPS has met its burden of showing a "legitimate, nondiscriminatory reason for" Guerrero's non-selection for the Deputy Sheriff III positions. Chuang, 225 F.3d at 1123-24.

Given DPS's legitimate and nondiscriminatory reason for Guerrero's non-selection, the burden shifts to Guerrero "to prove . . . that the legitimate reasons offered by [DPS] were not its true reasons, but were a pretext for discrimination." St. Mary's Honor Ctr., 509 U.S. at 515. Guerrero must show "both that the reason was false, and that discrimination was the real reason." Id. (emphasis in original).

Regarding Guerrero's discrimination claim, he points to no evidence creating a genuine issue of material fact as to whether his non-selection was based on discrimination due to his race or national origin. The only argument and evidence he points to relate to his prima facie case, but not to his burden of showing pretext. The Court therefore concludes that, absent a genuine issue of material fact, summary judgment in DPS's favor is warranted as to the discrimination claim based on his non-selection for the Deputy Sheriff III positions.

With respect to the claim for retaliation, Guerrero argues that his non-selection was the latest retaliatory event on a continuum of retaliatory actions that have been taken against him by DPS employees. After learning that Lts. Nagamine and Cummings would interview him, he asked to have them replaced, but that request was denied. (Guerrero Decl'n ¶ 31.) Guerrero questions the subjective

scoring methods they used and why they adjusted their scores after comparing notes. (Id. ¶ 33.) He also takes issue with the number of points he was given for questions that he answered correctly. (Id.) Further, at the time of the interview, Lt. Nagamine was aware of the lawsuit Guerrero had filed against him. (Nagamine Decl'n ¶ 13.) Although Lt. Nagamine states that he "was not biased against Plaintiff because of" the lawsuit, Guerrero's declaration and the continuum of alleged retaliatory actions against him create a genuine issue of material fact as to whether DPS's reason for not selecting him for the promotion was pretextual. The Court therefore denies summary judgment as to Guerrero's retaliation claim.

<u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS IN PART the Motion For Summary Judgment as to Guerrero's claim for race/national origin discrimination, and DENIES IN PART the Motion as to the claim for retaliation.

DATED: Honolulu, Hawaii, January 28, 2011.

IT IS SO ORDERED.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge